UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| BRASOTA MORTGAGE COMPANY, INC., d/b/a Brasota Mortgage Company | Case No: 8:05-bk-06215-KRM Lead Case |
| | Case No: 8:05-bk-02798-KRM |
| FUNDING MANAGEMENT CORPORATION, | Case No: 8:05-bk-06218-KRM |
| Debtor. _____/ | Substantively Consolidated |
| GERARD A. McHALE, JR., AS CHAPTER 11 TRUSTEE FOR BRASOTA MORTGAGE, CO., INC., and FUNDING MANAGEMENT CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 05-830 |
| VS. | |
| TIMOTHY L. HATTAWAY, MARY LILA HATTAWAY, UDELSON EQUIPMENT COMPANY, MANATEE COUNTY, GOLD BANK, BANK OF AMERICA, N.A., EMPLOYEE LEASING SOLUTIONS, INC., MILL CREEK VII INVESTORS, L.L.C., CASE CREDIT CORPORATION, UNITED STATES OF AMERICA, AND CALOOSA SHELL CORPORATION, | |
| Defendants. _____/ | |

**MEMORANDUM OPINION AND ORDER GRANTING THE**
**CHAPTER 11 TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This adversary proceeding came before the Court on March 15, 2006, on the Motion for Partial Summary Judgment (Doc. No. 9) filed by Gerard A. McHale, J.R., the Chapter 11 Trustee ("Trustee") and on the *ore tenus* opposition voiced at

the hearing by counsel for Timothy L. Hattaway and Mary Lila Hattaway (the "Hattaways").

The Court has considered the papers filed, the undisputed facts, the cases cited, and argument by counsel. For the reasons stated below, the Court concludes that the loan by the debtor, Brasota Mortgage Co., Inc. ("Brasota"), to the Hattaways is a "residential mortgage transaction" under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602(w). Accordingly, the Hattaways' defenses raised under TILA and the Home Ownership Equity Protection Act ("HOEPA") are inapplicable. Partial summary judgment will be entered for the Trustee on those defenses.

## THE UNDISPUTED FACTS

On or about December 4, 1998, Hans-Erik Nielsen and Vivian M. Nielsen (the "Nielsens"), as Lessors, and the Hattaways, as Lessees, entered into a one-year lease (the "Lease") of a single family residence located at 2211 7th Street West, Palmetto, FL 34221 (the "Property").[1] The Lease included an option to purchase the Property, whereby the Nielsens granted the Hattaways an option to purchase the Property for $185,000, less the total of monthly rents paid.

---

[1] Exhibit "A" to the Trustee's Motion.

The term of the Lease was extended another twelve months, to December 15, 2000, by an agreement dated November 29, 1999 (the "Extended Lease").[2] The Nielsens signed as "Lessors" and the Hattaways signed as "Lessees." Neither the Lease, nor the Extended Lease, was recorded in the public records of Manatee County, Florida.

Even though the Extended Lease had expired the Nielsens agreed to sell the Property to the Hattaways, as evidenced by letters faxed to Brasota by the Nielsens.[3] On April 4, 2001, approximately four months after the expiration of the Extended Lease, Brasota funded the Hattaways' purchase of the Property by loaning $190,000 ("Loan"). To that end, the Hattaways executed and delivered to Brasota a promissory note and a "Purchase Money First Mortgage," which was duly recorded in the public records of Manatee County. It is undisputed that the title from the Nielsens to the Hattaways was transferred by warranty deed with the closing of the Loan. It is also undisputed that the Property is the Hattaways' homestead, and that the Hattaways defaulted under the note and mortgage.

---

[2] Exhibit "A" to the Hattaways' Verified Amended Answer, Affirmative Defenses and Counterclaims filed on March 14, 2006 (Doc. No. 34).

## SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056.

The moving party bears the initial burden to show that there are no genuine issues of material fact. *Official Comm. of Unsecured Creditors v. Lerner (In re Diagnostic Instrument Group, Inc.)*, 283 B.R. 87, 93 (Bankr. M.D. Fla. 2002). Once the moving party has met that burden, the burden shifts to the non-moving party to demonstrate that there is a *material* issue of fact that precludes summary judgment. *Id.* At that point, the non-moving party must articulate those *specific* facts that establish an issue for trial. *Id.* In addition to establishing that there are genuine issues of material fact necessitating a trial, the non-moving party must establish a viable legal theory should it prevail on its version of the facts at trial. *Id.*

For summary judgment, the non-moving party is given the benefit of the doubt on credibility issues and all justifiable inferences are to be drawn in favor of the non-

---

[3] Exhibit "B" to the Trustee's Motion -- letter from the Nielsens acknowledging that the option expired on December 15, 2000.

moving party. *Id.* at 94. If the facts and law still do not present "sufficient disagreement" to require a trial, but remain so one-sided that one party must prevail as a matter of law, summary judgment must be granted. *Id.; Rossi v. Dupree (In re DuPree)*, 336 B.R. 490, 495 (Bankr. M.D. Fla. 2005).

The factual conflicts relied on by the non-moving party but must be both genuine and material. *Id. (citing Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). A properly supported summary judgment motion will not be defeated by merely colorable evidence that is not significantly probative. The existence of a mere scintilla of evidence will not suffice. *Dalton v. FMA Enterprises, Inc.*, 953 F. Supp. 1525, 1528 (M.D. Fla. 1997).

## DISCUSSION

The Hattaways contend that Brasota cannot foreclose because Brasota failed to give them the notice of rescission rights required by TILA. But, TILA exempts purchase money transactions and "residential mortgage transactions" from its application. *Beach v. Great Western Bank*, 670 So.2d 986, 989 (4th D.C.A. 1996)("a mortgage loan secured to finance the acquisition or initial construction of a residence is exempt from . . . TILA"); *Nix v. Option One Mortgage Corp.*, 2006 WL 166451, at **4-5 (D. N.J. Jan. 19, 2006)(if the transaction is

a residential mortgage transaction, then the borrower does not have any rescission rights under TILA).

Under TILA, 15 U.S.C. Section 1602(w),

> the term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

"Mortgage" is further defined under TILA in Section 1602(aa)(1):

> A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan. . . .

Taking these provisions together, if the Loan is a "residential mortgage transaction" to finance the Hattaways' acquisition of the Property, then neither TILA nor HOEPA apply. There is no right of rescission under TILA if a loan is a "residential mortgage transaction, as defined in section 1602(w) of this title." 15 U.S.C. § 1625(e)(1). HOEPA, 15

6

Case 8:05-ap-00830-KRM   Doc 41   Filed 05/05/06   Page 7 of 14

U.S.C. Section 1639, is also inapplicable to "residential mortgage transactions."[4]

The Loan provided the financing for the Hattaways' *initial* purchase of the Property. Without the Loan, or some other third-party financing, the Hattaways could not have exercised the option or acquired the Property from the Nielsens.

The Hattaways were unable to cite to any TILA case where a loan made to exercise a purchase option in a residential lease was considered to be a refinancing transaction. The Hattaways refer to a Staff Commentary of the Federal Depository Insurance Corporation ("FDIC") regarding the concept of "Acquisition" in its regulations ("Reg Z"):

> 5. Acquisition. i. A residential mortgage transaction finances the acquisition of a consumer's principal dwelling. The term does not include a transaction involving a consumer's principal dwelling if the consumer had *previously purchased and acquired some interest to the dwelling*, even though the consumer had not acquired full legal title.
>
> ii. Examples of new transactions involving a previously acquired dwelling include the financing of a balloon payment due under a land sale contract and an

---

[4] The HOEPA provision refers to mortgages defined under Section 1602(aa), which in turn excludes a residential mortgage transaction (which, as discussed above, is defined by Section 1602(w)).

> extension of credit made to a joint owner of property to buy out the other joint owner's interest. In these instances, disclosures are not required under § 226.18(q) or §226.19(a) (assumability policies and early disclosures for residential mortgage transactions). However, the rescission rules of §§ 226.15 and 226.23 do apply to these new transactions.
>
> iii. In other cases, the disclosure and rescission rules do not apply. For example, where a buyer enters into a written agreement with a creditor holding the seller's mortgage, allowing the buyer to assume the mortgage, if the buyer had previously purchased the property and agreed with the seller to make the mortgage payments, § 226.20(b) does not apply (assumptions involving residential mortgages).

12 C.F.R. Pt. 226, Supp. I, § 226.2(a)(24)(2006) (emphasis added).

The Hattaways argue from the Commentary that by having paid rents, which were to be credited toward the purchase price, they had acquired "some interest to the dwelling" before the Loan was made and thus, the transaction is not a "residential mortgage transaction." They ignore, first, the full text of the Commentary that "the consumer had previously purchased and acquired" an interest. No purchase of the Property occurred until the Loan was made.

8

The examples listed in the Commentary are instructive as to the meaning of "previously purchased and acquired some interest to the dwelling." In Paragraph 5ii, cited above, transactions to which TILA would apply include (a) the financing of a balloon payment due under a land sale contract and (b) an extension of credit made to a joint owner of property to buy out the other joint owner's interest. In such cases, TILA's rescission rules are said to apply.

These examples are distinguishable from the facts in this adversary proceeding. The Hattaways had only an unrecorded "naked option to purchase" which expired on its own terms more than three months before the Loan. The Hattaways could not have purchased any interest in the Property without exercising the option, which did not occur until the Loan was closed. That interest was acquired only when the Hattaways made the required payment of more than $170,000 to the Nielsens from the proceeds of the Loan.

The Hattaways cite three Florida cases to show that they acquired some kind of interest under Florida law. But, these cases are inapposite to the facts presented.

9

The Hattaways cite *Mid-State Inv. Corp. v. O'Steen*, 133 So.2d 455 (1st D.C.A. 1961) ("*O'Steen*"), for the proposition that the Nielsens were required to foreclose the Hattaways' rights to regain possession if they held over without exercising the purchase option. *O'Steen* involved an actual purchase of the home -- "the plaintiffs *purchased* a house and paid for it with money borrowed from the defendant. . . . the plaintiffs apparently assigned to the defendant their deed to the land and took back an unrecorded contract for deed, which was conditioned upon the monthly payment...." *Id.* at 455. The court correctly concluded that the defendant had no right to trespass and re-take the property from the plaintiff by force, but was obliged to go through the foreclosure process. *Id.* at 456-57.

The case of *Purcell v. Williams*, 511 So.2d 1080 (1st D.C.A. 1987) ("*Purcell*") does not provide support for the Hattaways' position either. *Purcell* involved an installment contract for the sale of real property that the court recognized as "a contract for deed which constituted a security transaction subject to the rules applicable to mortgages." *Id.* at 1082.

The Hattaways and the Nielsens did not enter into an installment contract for the sale of the Property. Their transaction was only a fixed-term lease, with an option to purchase. The Lease and Extended Lease cannot be characterized as an installment sale or a financing.

Even though the Nielsens had agreed to credit all rent payments to the purchase price, they were not financing the Hattaways' purchase. The total rents due under the Lease, even as extended for a second year, did not come close to the amount of the purchase price. The Lease itself was not the means of buying the Property.

The third case, *Hansen v. Five Points Guar. Bank*, 362 So.2d 962 (1st D.C.A. 1978) ("*Hansen*"), actually supports the Trustee's position. *Hansen* involved competing claims in a foreclosure proceeding which involved (1) a recorded twenty (20) year option to purchase which had been exercised and (2) a bank's later-recorded mortgage. *Id.* at 964-65. The purchaser under the option and the seller's bank fought to establish which of their respective interests had priority. *Id.*

The Hattaways cite *Hansen* for the proposition that an option creates an "interest in land." On the contrary, the court in *Hansen* specifically stated that "[n]o Florida case

11

has been called to our attention which holds that a naked option to purchase land standing alone creates an equitable interest in the real estate." *Id.* at 964.

In *Hansen*, the court correctly held that the bank was chargeable with notice of the recorded purchase option, which also had a provision that required consent of the optionee of any sale or encumbrance by the optioner. The court opined that:

> [w]ithout saying that the Hansen option to purchase real estate created an interest in land, we hold that it was a valid encumbrance upon the real estate, the notice and terms of which were chargeable to appellee, Arlington Bank at the time its mortgage was executed. The option to purchase followed by its exercise by Hansen put legal title to the property in Hansen subject only to [the first earlier recorded mortgage and not Arlington Bank's later filed mortgage].

*Id.* at 965 (emphasis added).

The cases cited by the Hattaways are not persuasive to establish that the Hattaways had already purchased and acquired "an interest" in the Property sufficient, for purposes of 15 U.S.C. Section 1602(w), before the Loan was made. In this case, there was no unrecorded deed and no financing by the Nielsens. There was never any promissory note from the Hattaways to the Nielsens or any long term

obligation attached to the two one-year leases. The Hattaways had no personal liability for the option price. The Hattaways were free to walk away from the Property after the Extended Lease expired: they were under no obligation to exercise their option under the terms of the Extended Lease.

The Hattaways had not purchased or acquired the Property prior to the closing of the Loan. The Hattaways were only able to purchase the Property with the proceeds of the Loan.[5]

## CONCLUSION

As a matter of law, the Court concludes that the Loan is a "residential mortgage transaction" under the definition of 15 U.S.C. Section 1602(w). The defendants' defenses based on TILA and HOEPA are inapplicable. Accordingly, it is

---

[5] The Hattaways make much of their $11,000 deposit for the purchase of the Property. This payment is not remarkable, and indeed, commonplace. Importantly, it is in keeping with the characteristics of a "purchase" transaction. Buyers of real property typically place deposits as "good faith" when they are serious about obtaining the financing for the purchase of real property. There is simply no support for the proposition that a naked option to purchase is converted to a refinance merely because the buyer places a deposit to purchase.

**ORDERED** that the Chapter 11 Trustee's motion for partial summary judgment is hereby granted consistent with this Memorandum Opinion.

**DONE AND ORDERED** at Tampa, Florida on May 5, 2006.

K. Rodney May
United States Bankruptcy Judge